**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00759-GNS**

**CHRISTINA B.**                                                                                  **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
*Commissioner of Social Security*                                        **DEFENDANT**

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

Claimant Christina B. appeals from the final determination of the Commissioner of Social Security denying her applications for supplemental security income benefits and disability insurance benefits. (DN 1). Claimant has filed a Brief. (DN 13). The Commissioner has responded in a Fact and Law Summary. (DN 17). The time for Claimant to file a reply has expired.

The District Judge has referred this case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation, as authorized in 28 U.S.C. § 636(b)(1)(B). (DN 10).

I.     Findings of Fact

Christina B. ("Claimant") applied for supplemental security income benefits under Title XVI and disability insurance benefits under Title II on December 20, 2022. (Transcript, hereinafter, "Tr." 268-82). She alleged disability beginning May 1, 2022 due to swelling in her feet and legs, arthritis in her ankles, thyroid problems, cellulitis, and lipidemia. (Tr. 380). Claimant's applications were denied at the initial review level on February 22, 2023, and again at the reconsideration review level on August 23, 2023.  (Tr. 107-18; 120-34). Claimant then requested an administrative hearing on her claims and provided a brief setting forth the factual and

legal basis for her entitlement to benefits. (Tr. 486-89). The brief argued, among other things, that Claimant was entitled to benefits pursuant to Listing 4.11 (Chronic Venous Insufficiency) from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*).

A.  The Administrative Hearing

Administrative Law Judge William Zuber ("ALJ Zuber") held a remote administrative hearing on December 17, 2024. (Tr. 41-66). Claimant appeared by telephone with her representative. (*Id.*). An impartial vocational expert also testified. (*Id.*). Claimant provided the following relevant testimony.

Claimant last worked as a part-time waitress at O'Charley's restaurant in 2023. (Tr. 47-48). The year before that, Claimant would clean houses several times a month to help her girlfriend with her company. (Tr. 48). But she could not continue working because of ongoing issues in her lower extremities. (Tr. 48-49).

She last treated with her vascular surgeon at the end of 2023. (Tr. 49). At that time, the surgeon's office performed several ultrasounds, but they couldn't find anything significant causing her swelling and edema and referred Claimant back to primary care. (*Id.*). Her primary care doctor sent her to a podiatrist who runs the Wound Center at Norton Hospital when she started having open wounds and blisters on her legs. (Tr. 49-50).

According to Claimant, she can only be on her feet for about ten minutes when walking or standing. (Tr. 52). After that, Claimant feels a tingling sensation on the bottom of her feet, then her feet start to become numb, and a burning sensation begins. (Tr. 52-53). She rarely sits without elevating her feet, which prohibits her from driving much. (*Id.*). She uses a cane to assist with walking "at all times" and says she "cannot walk without a cane." (Tr. 55). Daily, Claimant uses lumbar wraps on her legs. (Tr. 56). For two hours a day when she isn't wearing the lumbar wraps,

she uses pumps that squeeze her legs repeatedly for an hour at a time. (*Id.*). Her doctor has directed her not to cross her legs and to keep her feet above her heart "as much as physically possible." (Tr. 57). Claimant gets sores sporadically, mostly in her calf area, that sometimes pop or rupture. (Tr. 58). She also deals with painful cellulitis on her legs. (*Id.*). The pain in her feet and legs is "constant," and having to get up to walk or stand results in her pain increasing from a 4 to an 8. (Tr. 60).

At the end of the hearing, ALJ Zuber presented several hypothetical individuals to the VE, asking whether such individuals could perform work in significant numbers in the national economy. (Tr. 61-66). The VE testified that an individual who, among other restrictions, could sit for thirty minutes at a time for a total of four hours in an eight-hour workday and stand and/or walk for thirty minutes at a time for a total of four hours in an eight-hour workday could perform a reduced number of jobs at the light exertional level, including small production assembler, order caller, and mailroom worker. (*Id.*).

B. ALJ Zuber's Decision

After considering the Claimant's testimony, the medical records and opinions submitted, as well as other evidence submitted, ALJ Zuber issued an unfavorable decision on February 26, 2025. (Tr. 17-33). He applied the five-step sequential analysis for evaluating adult disability claims from 20 C.F.R. § 404.1520 and found as follows. First, Claimant has not engaged in substantial gainful activity since May 1, 2022, her alleged onset date. (Tr. 20). Second, Claimant has the following severe impairments: chronic venous insufficiency, tendonitis of both feet, tachycardia, and obesity. (Tr. 20-21). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 21-22).

3

At Step Four, ALJ Zuber determined Claimant has the residual functional capacity to perform "light work" as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following limitations:

> [S]he can sit for 30 minutes at a time for four hours total in an eight-hour workday. She can stand and/or walk for 30 minutes at a time for four hours total in an eight-hour workday. She can occasionally climb ramps and stairs, but she should never climb ladders, ropes or scaffolds. She can occasionally stoop, crouch, crawl and kneel. She can frequently balance. She should avoid all exposure to dangerous machinery and unprotected heights.

(Tr. 22). Also at Step Four, ALJ Zuber found Claimant has no past relevant work to consider. (Tr. 32).

Fifth and finally, considering Claimant's age, education, work experience, and RFC, ALJ Zuber found there are jobs that exist in significant numbers in the national economy that Claimant can perform. (Tr. 32-34). ALJ Brock concluded Claimant was not under a disability, as defined in the Social Security Act, from May 1, 2022, through the date of his decision. (Tr. 34).

Claimant administratively appealed ALJ Zuber's denial (Tr. 263-64), but the Appeals Council declined review (Tr. 1-3). At that point, ALJ Zuber's denial became the final decision of the Commissioner, and Claimant appealed to this Court pursuant to § 405(g). (DN 1).

II.    Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant

numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

III.    Analysis

Claimant identifies three errors from ALJ Zuber's decision she believes warrant reversal.

A.  ALJ Zuber's evaluation of Claimant's lower extremities at Step Two

First, Claimant argues ALJ Zuber erred by failing to discuss how he evaluated many of Claimant's diagnosed impairments affecting her lower extremities at Step Two. (DN 13-1, at PageID # 879). Step Two of the sequential evaluation process requires the claimant to establish the existence of a severe medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). In

the Sixth Circuit, the severity determination at Step Two is "a de minimis hurdle in the disability evaluation process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* The goal at Step Two is to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)).

ALJ Zuber determined at Step Two that Claimant had the following severe impairments: chronic venous insufficiency, tendonitis of both feet, tachycardia, and obesity. (Tr. 20). ALJ Zuber also determined that although Claimant had high thyroid stimulating hormone and was prescribed medication, because there was no evidence of signs or symptoms of thyroid disease, it is a non-severe impairment. (Tr. 21).

Claimant argues that ALJ Zuber failed to discuss her other diagnosed impairments affecting her legs and feet, including her peripheral edema, lymphedema, peripheral neuropathy, cellulitis, stasis dermatitis, tibial tendinitis, forefoot varus, hindfoot valgus, syndesmosis, derangement of foot joint, subtalar and tibiotalar joint arthritis, and anemia. (*Id.*). Because Claimant expressly directed the ALJ to these impairments in her pre-hearing brief, she asserts ALJ Zuber, at a minimum, was required to discuss and explain his assessment of such impairments in his decision. (*Id.*).

The Commissioner responds that the mere diagnosis or existence of an impairment does not automatically translate to a Step-Two severity finding. (DN 17, at PageID # 984-85). The Commissioner further explains that because ALJ Zuber found Claimant had multiple severe impairments, it is "legally irrelevant" whether he found other impairments to be non-severe since he was required to consider both Claimant's severe and non-severe impairments in the remaining steps of the evaluation. (*Id.*). ALJ Zuber, the Commissioner points out, discussed many of the

6

impairments Claimant says were not considered, including cellulitis and neuropathy, in his RFC analysis. (*Id.*). Any Step Two failure, the Commissioner concludes, was harmless. (*Id.* at PageID # 896).

The Court agrees with the Commissioner. Although Claimant identifies a list of conditions affecting her lower extremities, she provides no evidence to prove these conditions qualify as severe medically determinable impairments. Her assertion that these are diagnosed conditions does not suffice because "mere diagnosis" does not alone lead to a conclusion that impairments are (or are not) severe. *Higgs*, 880 F.2d at 863. And Claimant's allegation that an ALJ must consider every condition or impairment identified in a pre-hearing brief is unsupported. Such a requirement would place an undue burden on an ALJ to assess numerous potentially groundless impairments. For these reasons, the Court finds no error in ALJ Zuber's Step Two evaluation.

B.  ALJ Zuber's evaluation of Listing 4.11 at Step Three

Next, Claimant argues ALJ Zuber erred at Step Three in not finding that Claimant met the criteria in Listing 4.11 for Chronic Venus Insufficiency. (DN 13-1, at PageID # 879-81). To meet a listed impairment at Step Three, a claimant must satisfy all criteria from that listing. *Roby v. Comm'r of Soc. Sec.*, 48 F. App'x 532, 536 (6th Cir. 2002) (citing *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)). "If all of the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Comm'r*, 34 F. App'x 202, 203 (6th Cir. 2002). Coming "close to" or almost satisfying the requirements of a listed impairment is insufficient. *Elam ex rel Golay v. Comm'r*, 348 F. 3d 124, 125 (6th Cir. 2003).

At Step Three, ALJ Zuber considered Claimant's chronic venous insufficiency under Listing 4.11. (Tr. 21-22). This Listing requires evidence of chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and one of the following:

A. Extensive brawny edema involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip;

OR

B. Superficial varicosities, statis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.11.

ALJ Zuber determined that Claimant could not meet either the subpart A or B criteria. (Tr. 21-22). As to A, ALJ Zuber indicated that although Claimant's primary care records reflect "+2 lower extremity edema," there is no evidence of "extensive brawny edema." (*Id.* (citing Exs. 4F, 5F, 10F)). ALJ Zuber also noted that after seeing a cardiologist, Claimant's edema improved and eventually resolved with diuretic therapy. (*Id.* (citing Ex. 8F)). As to B, ALJ Zuber described evidence of Claimant's wound care in May 2024 with resolution of cellulitis in October 2024 and Claimant's testimony that she participated in wound care for about two and a half months. (Tr. 22 (citing Ex. 10F)). But ALJ Zuber distinguished that "there is no evidence of superficial varicosities, statis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least three months of prescribed treatment." (*Id.* (citing Ex. 11F)).

Claimant now argues her pre-hearing brief detailed evidence demonstrating her ability to meet the criteria from subparts A and B of this Listing. (*Id.*). In support, Claimant points to being consistently diagnosed with CVI for more than five years, findings of 2+ edema extending from her ankle to her knee, and being diagnosed with varicosities, stasis dermatitis and recurrent ulcerations for over three years. (*Id.* (citing Tr. 544, 571, 614, 654, 721, 806, and 819)).

The Commissioner responds that ALJ Zuber explained how Claimant's impairments did not meet the subpart A and B criteria from Listing 4.11 at Step Three. (DN 17, at PageID # 898).

8

The Commissioner explains that a showing of 2+ edema differs from a showing of extensive brawny edema, as required by subpart A. (*Id.* at PageID # 898-99). And the Commissioner explains that none of the records cited by Claimant establish she has been diagnosed with "varicosities, stasis dermatitis, <u>and</u> either recurrent ulceration that has not healed following at least three months of treatment." (*Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.11B (emphasis added))). Claimant's failure to produce evidence meeting subparts A and B, the Commissioner argues, requires denial of relief. (*Id.*).

None of the evidence Claimant identifies demonstrates her meeting the criteria of subparts A or B. To start, Claimant's attempts to meet Listing 4.11 by emphasizing the consistent diagnoses of chronic venous insufficiency in the record fail. The regulations mandate that a claimant "cannot meet the criteria of a listing based only on a diagnosis." 20 C.F.R. § 404.1525(d).

Nor does Claimant provide evidence of "extensive brawny edema" as required in subpart A of the Listing. "Brawny edema" is described as:

> swelling that is usually dense and feels firm due to the presence of increased connective tissue; it is also associated with characteristic skin pigmentation changes. It is not the same thing as pitting edema. Brawny edema generally does not pit (indent on pressure), and the terms are not interchangeable. Pitting edema does not satisfy the requirements of 4.11A.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.00G. Several medical records identified Claimant's edema as "pitting," which is distinct from "brawny edema." (*See* Tr. 564 ("Trace to 1+ pitting edema to RLE"); Tr. 569 ("Bilateral 1+ pitting edema in ankles and feet")); *see Momany v. Comm'r of Soc. Sec.*, No. 2:17-CV-10626, 2019 WL 1503129, at *6 n. 3 (E.D. Mich. Jan. 23, 2019). And the records evidencing Claimant's "bilateral 2+ peripheral edema" do not identify whether the edema was pitting or brawny. (*See* Tr. 625, 639, 662, 707, ("bilateral 2+ peripheral edema")). Because strict compliance of all criteria from a listing is required, the Court cannot

9

find this evidence meets subpart A requirement for "extensive brawny edema."

As for subpart B, Claimant alleges her recurrent ulcerations have "existed over three years." However, the medical records tell a different story. Claimant's medical records show she consistently had no ulcerations. (*See* Tr. 560, 563, 569-60, 622, 625, 637, 639, 662-63, 704, 707, 723-24, 733, 793, 796, 801, 806, 817, 831). A single record in the 840-page administrative record reflects Claimant was discharged from wound care at U of L Health on May 13, 2024 and provided instructions for treating two wounds. (Tr. 839-40). But this record does not specify that Claimant's wounds were ulcerations or that if they were ulcerations, they persisted for three months without healing. Nor does Claimant produce records from wound care predating her discharge or any follow-ups after she was discharged.

The same is true for the other fleeting references to wound care in the record. For instance, Claimant reported participating in wound care during a consultation for her hypothyroidism with Dr. Anil K. Sharma in August 2024. (Tr. 786-87). While this visit occurred three months after Claimant's discharge, there is no evidence indicating Claimant continued to have wounds, specifically ulcerations, throughout this period without healing. On the contrary, Dr. Sharma found on physical exam that Claimant had no rashes or lesions on her skin and additionally found no edema in her extremities. (*Id.*).

The Court cannot infer from the lone discharge record or from other brief references to wound care in the record that Claimant had ulcerations lasting more than three months despite prescribed treatment sufficient to meet the requirement in subpart B. Moreover, Claimant's hearing testimony that she participated in wound care for 2.5 months supports her failure to meet the durational requirement in subpart B. Again, because strict compliance is required to meet a Listed Impairment, the Court does not find the evidence Claimant submits to be sufficient to establish the

subpart B criteria of Listing 4.11.

ALJ Zuber thoroughly evaluated Listing 4.11 at Step Three and his conclusions that Claimant could meet neither the subpart A nor the subpart B requirements are supported by substantial evidence in the record. Accordingly, no error results.

> C. ALJ Zuber's determination that Claimant can perform the jobs identified at Step Five under the limitations of the RFC at Step Four

Lastly, Claimant states she cannot perform any work within the limitations and RFC identified by ALJ Zuber. (DN 13-1, at PageID # 881-83). And even if she could perform work under the RFC, Claimant alleges that the jobs identified by the VE during the hearing and listed by ALJ Zuber in the decision would not allow work under the opined RFC. (*Id.*).

When a claimant's residual functional capacity does not fall squarely within the grid guidelines, the grid guidelines are not binding and instead are used as an analytical framework. 20 C.F.R. Pt. 404, Subpt. P. App'x 2, § 200.00(d). In such situations, a vocational expert may be called to testify as to whether a significant number of jobs exist in the national economy that a hypothetical individual with claimant's limitations can perform. Where the ALJ presents an accurate hypothetical, he can then "rely on the vocational expert's testimony to find that the plaintiff can perform a significant number of jobs in the national economy." *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 680 (6th Cir. Oct. 2, 2013).

During the administrative hearing, ALJ Zuber presented a hypothetical to the VE for an individual who could perform light work but could sit for thirty minutes at a time for a total of four hours in an eight-hour workday and stand and/or walk for thirty minutes at a time for a total of four hours in an eight-hour workday, among other restrictions. (Tr. 61). The VE testified that "a very limited range of work" for this hypothetical would be available. (*Id.*). More specifically, the VE indicated there would be a reduced number of jobs at the light exertional level, including small

11

production assembler, order caller, and mailroom worker. (*Id.*).

For the second hypothetical, ALJ Zuber reduced the time on sitting and standing/walking to fifteen minutes at a time, to which the VE stated no work would be available because "that would be too frequent in terms of alternating positions and would typically interfere with persistence and pace and productivity." (Tr. 62). Returning to his first hypothetical, ALJ Zuber asked whether jobs would still be available if the individual required an option to elevate her feet to waist level while seated. (Tr. 63). The VE responded that adding such a limitation would amount to no work being available. (*Id.*).

Claimant's representative then asked the VE whether including an additional limitation in the first hypothetical accounting for five minute breaks to transition from sitting to standing/walking and vice-versa would be permitted under the jobs identified. (Tr. 64-65). The VE testified the previously identified jobs for the first hypothetical would not be available if those transitional breaks were occurring consistently day after day. (Tr. 65).

At Step Four, ALJ Zuber adopted the first hypothetical presented to the VE to find Claimant had the RFC to perform light work, with exertional limitations, including that she can "sit for 30 minutes at a time for four hours total in an eight-hour workday. She can stand and/or walk for 30 minutes at a time for four hours total in an eight-hour workday." (Tr. 22).

Because the VE testified that the first hypothetical, which ALJ Zuber adopted into the RFC, would allow "for a very limited range of work," Claimant argues such limitations are not supported by substantial evidence in the record. (DN 13-1 (citing Tr. 62)). Claimant also takes issue with the proposition that employers would permit alternating between sitting and standing/walking every thirty minutes, calling it "dubious." (*Id.*). Even if alternating every thirty minutes were appropriate, Claimant maintains that no employer would accept the transition time that is required to alternate

12

positions. (*Id.* (citing Tr. 63)). Because ALJ Zuber did not consider the practical limitations of the RFC limitations he imposed, Claimant argues reversal of the decision is warranted. (*Id.*).

The Commissioner disagrees with Claimant's interpretation of the VE's testimony. (DN 17, at PageID # 889-901). According to the Commissioner, although the VE noted the first hypothetical would result in "a very limited range of work," an individual under the hypothetical could still perform three occupations that exist in significant numbers in the national economy. (*Id.*). Claimant's speculation that she could not perform the identified occupations within the bounds of the ALJ's RFC is not evidence, according to the Commissioner. (*Id.*). The Commissioner also points out that ALJ Zuber did not adopt limitations in the RFC as to Claimant being off task while alternating positions or elevating her legs throughout the workday, and he was not bound to do so simply because they were discussed with the VE. (*Id.*). The Commissioner concludes ALJ Zuber reasonably relied on the VE's testimony to conclude Claimant was not disabled because she could perform other work in the national economy. (*Id.*).

Turning first to Claimant's allegation that she cannot perform light work while alternating between sitting and standing positions, the Court finds Claimant waived this argument. Claimant provides no evidence demonstrating she cannot perform work under the RFC and does not identify support for additional limitations in the RFC. By failing to provide any meaningful development, Claimant has waived her argument that she cannot perform work under the RFC. *See Carver v. Saul*, No. 3:20-cv-00051, 2020 WL 8458801, at *18 (N.D. Ohio Oct. 5, 2020) (citing *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("arguments adverted to in a perfunctory manner, are waived")).

Additionally, Claimant's conjecture that an individual with her RFC limitations could not perform the jobs identified by the VE is unsupported. As notgd by the Commissioner, although

13

the VE indicated that the first hypothetical would allow for "a very limited range of work," the VE still found jobs that existed in significant numbers in the national economy that such a hypothetical individual could perform. The VE provided three jobs: small production assemblers (41,000 jobs nationally); order callers (21,700 nationally), and mailroom workers (34,000 nationally). (Tr. 62). Again, Claimant makes no meaningful or developed challenge to her ability to perform this work and presents no conflicts between the RFC ALJ Zuber adopted and the jobs presented by the VE.

Finally, Claimant inappropriately places stock in the VE's testimony regarding additional limitations that ALJ Zuber ultimately declined to adopt. No requirement exists that an ALJ must adopt any hypothetical limitation discussed with the VE during the administrative hearing. ALJ Zuber did not adopt limitations into Claimant's RFC regarding either transitions between positions or elevating her legs because he did not find such restrictions were supported by the evidence. In accusing ALJ Zuber of failing to "assess practical limitations" in the RFC, Claimant identifies no evidence that would support inclusion of additional limitation in the RFC. When a hypothetical is identical to the RFC adopted, the claimant bears the burden of showing that the hypothetical should have included additional limitations. *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). Claimant fails to meet this burden here.

Because ALJ Zuber's reliance on the VE's testimony as to the first hypothetical was appropriate and constitutes substantial evidence in support of his RFC, and Claimant fails to present any supported argument to the contrary, the Court finds no error.

14

<u>IV. Recommendation</u>

ALJ Zuber's decision is supported by substantial evidence in the record and comports with the applicable regulations; accordingly, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

<u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. '' 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:        Counsel of Record